**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

PATRICIA BARRETT,
Plaintiff,

Case No. 3:23-cv-1169-TJC-PDB

v.

CREATIVE CHOICE HOMES XXIV LTD. and IMPRO SYNERGIES LLC,
Defendants.

---

**ORDER**

**THIS CASE** is before the Court on cross motions for summary judgment. Plaintiff Patricia Barrett is a resident of Sanctuary Walk Apartments. Defendant Creative Choice Homes XXIV LTD. owns the property and Defendant Impro Synergies LLC is the property manager (collectively Defendants).[1] This litigation concerns Barrett's request for a first-floor apartment after a fall limited her mobility. Barrett alleges Defendants' delays in providing a reasonable accommodation violated the Fair Housing Act (FHA) (Count I) and amounted to coercion and intimidation under the FHA (Count II). Barrett seeks summary judgment on Count I, while Defendants seek summary judgment on both counts. Docs. 72, 80. The matter has been fully briefed. Docs.

---

[1] Defendants' summary judgment filings refer to themselves collectively as "Defendants." The Court does the same.

87–89. On April 23, 2026, the Court held a hearing on the motions and incorporates that discussion by reference. Doc. 96. The parties then impassed at mediation. Doc. 98.

## I. BACKGROUND

Barrett and her husband lived at Sanctuary Walk for more than ten years in a second-floor two-bedroom apartment. After a fall in February 2023, Barrett had significant trouble going up and down stairs to and from her apartment.[2]

In April, Barrett told the onsite manager she needed to move to a first-floor apartment. Doc. 80-1 at 39.[3] Barrett was told to provide a doctor's note in support. Id. The doctor's note stated "[d]ue to her injuries it is recommended that she lives in a first floor apartment . . . ." Doc. 72-7. Barrett was allegedly told a downstairs unit would not be a problem. Doc. 80-1 at 39. The regional property manager was visiting a week or two later, and Barrett spoke to her about a first-floor unit. See Doc. 80-2 at 57–59. Also in April, at least two first-floor two-bedroom units, including the one directly beneath Barrett (4105), were vacant. See Doc. 72-12. When Barrett followed up, she was told it would be June

[2] All dates are in 2023, unless otherwise noted. Barrett has other chronic conditions impacting her mobility, but the request to transfer units was because her condition worsened after the fall.

[3] The deposition transcripts for Barrett and Jillian Davis are condensed transcripts. For clarity, citations are to the deposition page number, not the ECF page number. All other citations are to ECF page number.

or July before a unit was available. Doc. 80-1 at 41. Barrett requested to move to the unit beneath her but was told it was not available. See id. at 41, 58.

By June, Barrett had not moved, and she had an attorney. On June 26, Barrett's attorney wrote Defendants requesting Barret be transferred to a first-floor unit as a reasonable accommodation.[4] Doc. 72-10. Barrett submitted another doctor's note, dated July 18, stating "[a]t this time, it is a medical necessity that she be transferred to a first-floor apartment."[5] Doc. 72-8. In August, Defendants informed Barrett a one-bedroom first-floor unit would be available shortly.[6] Doc. 72-12. Barrett declined this option, preferring a two-bedroom unit and identifying four first-floor two-bedroom units that were vacant. Doc. 72-12. On August 10, a housing tester visited and was advised there would be first-floor two-bedroom apartments available in two to three weeks. Doc. 80-11. When the tester followed up, she was told the units had not

[4] This letter attached the same doctor's note from April. Although Barrett later provided additional doctor's notes, the record does not reflect Defendants requested more information to support the transfer request.

[5] Another note, from a different doctor, dated July 24, stated "it would be in [Barrett's] best interest to have an apartment/domicile on a ground floor." Doc. 80-5.

[6] The parties dispute whether this was communicated to Barrett, but it was mentioned in an email to Barrett's attorney, who confirmed the request for a first-floor two-bedroom unit. See Doc. 72-12. The email does not mention whether the one-bedroom was intended as a temporary option until a two-bedroom was available. Defendants dispute that a reasonable accommodation required a first-floor two-bedroom unit. See Doc. 88 at 7.

been "turned," but she could take possession "as is." Doc. 72-18 ¶ 16. During 2023, Defendants had maintenance and other staffing problems, resulting in delays with preparing vacant units for occupancy. See Doc. 80-2 at 59, 63–68.

In late October, Barrett was able to do walk throughs of several first-floor two-bedroom apartments. A week later, Barrett declined one unit (4104) because of various problems, including lack of new carpet and blinds, and various smells. Doc. 72-17. Although other options were discussed, Barrett agreed to wait thirty days for her preferred unit (4105) to be prepared for occupancy.[7] See Doc. 80 at 4–5; Doc 80-1 at 59; Doc. 80-2 at 124. Barrett moved into her current first-floor two-bedroom unit (4105) on December 13, 2023, where she remains today. See id. at 58.

## II. ANALYSIS

### A. Standard

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

### B. Alleged Mootness

Defendants argue they are entitled to summary judgment because

[7] For summary judgment purposes, Barrett agrees that any delay of her requested accommodation ended on October 30, when she chose to wait for unit 4105 to be prepared. Doc. 72 at 10 n.2.

Barrett has moved into a first-floor two-bedroom unit of her choosing, making the issue moot. To the extent Barrett's complaint seeks the relief of a transfer, the issue is moot. However, Barrett also seeks compensatory and punitive damages, and those issues are not moot. Hunt v. Amico Props., L.P., 814 F.3d 1213, 1221 (11th Cir. 2016).

C. Alleged Violation of Fair Housing Act

To establish a prima facie case for failure to accommodate under the FHA, a plaintiff must prove she: (1) is disabled as defined by the FHA,[8] (2) requested a reasonable accommodation, (3) the requested accommodation was necessary to afford her "an opportunity to use and enjoy the dwelling," and (4) Defendants refused to make the accommodation. Hunt, 814 F.3d at 1225 (citation omitted). Both Barrett and Defendants seek summary judgment for the failure to accommodate claim. Delays in providing an accommodation may be a constructive denial. See Bhogaita v. Altamonte Heights Condo. Ass'n, Inc., 765 F.3d 1277, 1286 (11th Cir. 2014) ("The failure to make a timely determination after meaningful review amounts to constructive denial of a requested accommodation, 'as an indeterminate delay has the same effect as an outright denial.'" (quoting Groome Res. Ltd. v. Parish of Jefferson, 234 F.3d 192, 199

[8] For summary judgment purposes, the Court presumes Barrett was disabled in April, when she first requested to transfer, although Defendants dispute this. See Doc. 88 at 4.

(5th Cir. 2000)).

To decide Defendants' summary judgment motion, the Court must view facts in the light most favorable to Barrett, the non-moving party. Barrett alleges she requested a reasonable accommodation in April and, after supporting her request with a doctor's note, was told a transfer to a first-floor unit would be provided. Nothing happened, even though several first-floor two-bedroom apartments were vacant. A tester confirmed there were first-floor two-bedroom units available in August, but none were offered to Barrett. Barrett also argues Defendants could (and should) have prioritized preparing a unit for her or considered other options, such as use of outside vendors for occupancy preparation.

In the light most favorable to Barrett, the delay in providing the transfer to a first-floor unit (almost seven months after her verbal request and three to four months after her attorney's request and a doctor stated it was a medical necessity) could support a violation of the FHA. Accordingly, Defendants' summary judgment motion as to failure to accommodate is due to be denied.[9]

To decide Barrett's partial summary judgment motion, the Court must view facts in the light most favorable to Defendants, the non-moving parties.

[9] Count I references Section 3604(f)(3)(A) involving modification and Section 3604(f)(3)(B) involving accommodation, but the Count only describes Barrett's request for accommodation and is labeled as a failure to accommodate. The Court has construed Count I as a failure to accommodate claim.

Defendants rely on the first doctor's note (that "recommended" Barrett be allowed to move to a first-floor unit) to argue her April request did not trigger their legal duty. Instead, their duty to provide a reasonable accommodation became clear in June and July, with Barrett's updated request and the doctor's note stating transfer was a medical necessity. After that, Defendants argue they actively engaged in the interactive process, including offering Barrett a transfer to a first-floor one-bedroom unit in August, and later offering several other first-floor two-bedroom units that Barrett turned down. On or around October 30, Barrett turned down an available first-floor two-bedroom unit and chose to wait 30 days while her preferred unit was prepared for occupancy.

In short, Defendants argue once the need for accommodation was supported, they promptly responded, and continued to communicate and exchange options until Barrett was satisfied. Defendants acknowledge there were vacant first-floor two-bedroom units but say these were not ready for occupancy.[10] Defendants acknowledge some delay in preparing the units for occupancy was due to their own issues, primarily with maintenance staffing, but some delay was due to Barrett's decision to decline some units and instead wait for her preferred unit.

There are material fact issues as to when Defendants' duty to provide a

[10] They also argue it is likely Barrett would have turned these down, like her later actions turning down units Defendants had prepared for occupancy.

reasonable accommodation was triggered and whether Defendants' efforts were sufficient. See Bhogaita, 765 F.3d at 1285–86 ("The FHA does not demand that housing providers immediately grant all requests for accommodation."). Accordingly, Barrett's partial summary judgment motion is due to be denied.

D. Alleged Coercion, Intimidation or Threats (Section 3617)

"The FHA makes it 'unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of ... any right granted or protected by Section 3603, 3604, 3605, or 3606 of this title.'" Watts v. Joggers Run, 133 F.4th 1032, 1043–44 (11th Cir. 2025) (quoting 42 U.S.C. § 3617). For her interference claim, Barrett "need only plausibly allege an underlying violation of one of the four statutes . . . ." Id. at 1044. Because the Court has denied summary judgment on the failure to accommodate claim, it must also deny Defendants' summary judgment motion on the interference claim.

E. Punitive Damages

The parties express the standard for punitive damages differently. Barrett argues "[p]unitive damages are available under the FHA when a defendant's conduct is 'motivated by evil motive or intent' or shows a 'reckless or callous disregard of, or indifference to a plaintiff's rights.'" Doc. 87 at 24 (citation omitted). Defendants argue punitive damages require proof they acted "wantonly or willfully or were motivated by ill will, malice, or a desire to injure the plaintiffs." Doc. 80 at 13 (citation omitted). As a matter of law, on this

record, neither standard is met. Accordingly, Barrett's request for punitive damages may not proceed.

Accordingly, it is hereby

**ORDERED:**

1. Plaintiff's Motion and Memorandum in Support of Partial Summary Judgment (Doc. 72) is **DENIED**.

2. Defendants' Motion for Summary Judgment (Doc. 80) is **GRANTED in part and DENIED in part.** The motion for summary judgment is **DENIED** as to Count I and Count II but **GRANTED** as to Barrett's request for punitive damages.

3. By separate Order, the Court will set the case for trial and establish related deadlines.

**DONE AND ORDERED** in Jacksonville, Florida the 5th day of August 2026.

Timothy J. Corrigan
TIMOTHY J. CORRIGAN
Senior United States District Judge

ddw
Copies:

Counsel of record